IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | Case No. 24-cv-11547 |
| Plaintiff, | ) ) | District Judge Jeremy C. Daniel |
| v. | ) ) | Magistrate Judge Jeannice W. Appenteng |
| MK DELIVERIES, INC., et al., | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is counter-plaintiff's motion to compel, Dkt. 57. For the reasons below, the motion is granted.

**I.   Background**

In May 2024, an Illinois state court awarded the Estate of Charles Schauer over $13 million after a jury found MK Deliveries, Inc., Felix Ocampo, and Erin Zilka at fault for a car accident that led to Charles Shauer's death. Dkt. 2 at 3. West Bend Mutual Insurance Company ("West Bend") undertook the defense of MK Deliveries and Ocampo in the state litigation as MK Deliveries' insurer. West Bend appealed the jury verdict, which remains pending before the Illinois Appellate Court.

Meanwhile, in November 2024, West Bend filed the instant suit seeking declaratory judgment about the policy limits and contractual obligations owed to MK Deliveries. *Id.* The Estate, as assignee of the insureds, filed counterclaims alleging West Bend breached the policy and acted in bad faith when it refused to

settle the state case within policy limits before trial. Dkt. 53. The Estate argues West Bend is obligated to pay the full amount of judgment, the full pre- and post-judgment interest on that amount, reasonable attorney fees and other costs, and statutory damages under Section 155 of the Illinois Insurance Code.

Discovery began in this case in January 2025. The Estate requested documents underlying West Bend's decision not to settle the state case before trial, including (1) documents and communications about the underlying litigation (RFP Nos. 11-15, 21-22, 30)[1], and (2) West Bend's claim file (RFP Nos. 4, 16, 22, 31-32)[2].

---

[1] RFP No. 11: All Documents and Communications relating to settlement demands by or on behalf of the Estate in the Underlying Action.

RFP No. 12: All Documents and Communications relating to any analysis of the settlement demands made to West Bend or its insured in the Underlying Action.

RFP No. 13: All Documents and Communications regarding settlement offers made to the Insureds.

RFP No. 14: All Documents and Communications regarding West Bend's analysis of the Underlying Action.

RFP No. 15: All Documents and Communications regarding West Bend's analysis of the exposure the Insureds faced in the Underlying Action.

RFP No. 21: All Documents and Communications related to West Bend's refusal to settle within policy limits ahead of the jury trial in the Underlying Action.

RFP No. 22: All Documents and Communications regarding the adjustment of the Estate's claim for damages and the Underlying Action.

RFP No. 30: All Documents and Communications regarding the settlement amounts considered in connection with the Underlying Action by West Bend, whether extended to the Estate or never offered.

[2] RFP No. 4: Produce the entire Claims File for the Underlying Action, appeal of the Underlying Action, the Accident, and the Claim.

RFP No. 16: All Documents and Communications, whether internal or external, regarding the policy time limit demands sent to You on behalf of the Estate.

2

Dkt. 57 at 6; Dkt. 57-7. West Bend objected to the requests and instead produced a privilege log, invoking attorney-client privilege and the work-product doctrine. At the Estate's request, West Bend produced two amended privilege logs to address purported deficiencies. The Estate maintains that the second amended privilege log is deficient and filed a motion to compel the withheld documents. Dkt. 57. West Bend filed a response in opposition, insisting that its privilege log is sufficient and that the withheld documents are covered by attorney-client privilege and/or work product doctrine. Dkt. 58. The Estate filed a reply. Dkt. 63.

## II. Legal Standard

"The attorney-client privilege prohibits the compelled disclosure of 'confidential communications between a client and an attorney for the purposes of obtaining legal advice.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013) (quoting *Denius v. Dunlop*, 209 F.3d 944, 952 (7th Cir. 2000)). To determine whether a communication is covered by attorney-client privilege, the Court asks "(1) whether 'legal advice of any kind [was] sought … from a professional legal advisor in his capacity as such'; and (2) whether the communication 'was relat[ed] to that purpose' and 'made in confidence … by the client.'" *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (quoting *United States v. Evans*,

---

RFP No. 31: All Documents and Communications regarding any undertaking by West Bend to determine its Insureds' liability for the Accident.

RFP No. 32: All Documents and Communications in which West Bend attributed a percentage to the liability of its Insureds.

113 F.3d 1457, 1461 (7th Cir. 1997)). The party invoking the privilege bears the burden of demonstrating each element. *RBS Citizens, N.A.*, 291 F.R.D. at 216-17.

The work product doctrine prevents disclosure of documents "prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. "The work product doctrine is not coextensive with attorney-client privilege and each must be established separately." *Hobbs v. USAA Gen. Indem. Co.*, No. 3:20-CV-00262-MAB, 2022 WL 2528239, at *4 (S.D. Ill. July 7, 2022). The party invoking work-product protection must establish its existence. *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2018 WL 704693, at *4 (N.D. Ill. Feb. 5, 2018). Notably, "[t]he case law makes clear that work-product doctrine protects parties from sharing their materials developed for the present case, but not necessarily for an earlier matter." *Id.* Courts in this circuit have held that when, as here, an insured sues their insurer, the insurer "must establish the documents are work product of the *current* litigation," not created in anticipation of the underlying coverage dispute. *Hobbs*, 2022 WL 2528239, at *7 (emphasis in original); *see also Woodruff v. Am. Fam. Mut. Ins. Co.*, 291 F.R.D. 239, 247 (S.D. Ind. 2013) (finding documents created in anticipation of underlying lawsuit not protected).

A party that withholds discoverable information by claiming the information is privileged must sufficiently describe the communications or documents "and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Courts in

4

this district therefore require that privilege logs identify "for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006) (emphasis in original); *see also Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) (explaining that a party "asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld"). "The claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'" *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting *United States v. Lawless*, 709 F.2d 485 (7th Cir. 1983)); *see also Muro*, 2006 WL 3422181, at *2.

III. **Analysis**

    **A. The requested claim file and underlying-litigation documents are relevant.**

Although West Bend does not challenge the relevance of the Estate's request, relevance is an important place to start. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)."). The Estate asserts "documents, communications, claim notes, or other materials regarding West Bend's settlement analysis, exposure analysis, and the rationale behind West Bend's refusal to tender its policy limits" are "central" to this litigation. Dkt. 57 at 6. The Court agrees.

5

Illinois law establishes a duty for insurers to settle claims against its insured in good faith. *Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008) (citing *Haddick ex rel. Griffith v. Valor Ins.*, 198 Ill. 2d 409 (2001)). The duty arises to combat the competing interests of an insurer and insured who together defend a suit initiated by an injured third party. *Id.* As the Seventh Circuit has explained, when the third party sues the insured for an amount above the policy limit, "the insurer may be tempted to decline the settlement offer, no matter how good the deal is for the insured, and go to trial" because "[i]t makes no difference to the insurer's bottom line whether the case is settled or the jury awards astronomical damages," if the insurer is obligated to pay out only the maximum policy amount. *Id.* However, the insured will calculate the benefits of settlement and the risk of trial differently because the insured will be obligated to pay the amount above the policy limit. *Id.* To protect the interests of the insured, Illinois courts enforce a duty to settle in good faith so that if the duty is breached, the insurer must pay the entire judgment. *Id.*

In this case, the Estate, as assignee of the insured, alleges West Bend breached its duty to settle in good faith. Dkt. 53; Dkt. 57 at 6. Accordingly, documents about West Bend's analysis of the insurance claim and West Bend's refusal to settle are relevant. *See Hobbs*, 2022 WL 2528239, at *2 ("In a bad faith refusal to settle case, 'the plaintiff insured is entitled to know the substance of the investigation, the information available and used to make a decision, and the evaluations and advice relied upon for the decision.'") (quoting *Prisco Serena Sturm*

6

*Architects, Ltd. v. Liberty Mut. Ins. Co.*, No. 94 C 5716, 1996 WL 89225 (N.D. Ill. Feb. 27, 1996)).

      **B. The privilege log is deficient, and West Bend has waived privilege.**

      West Bend insists responses to the Estate's requests cannot be compelled because the documents are privileged. West Bend's privilege log is 51 pages long and includes over 250 entries, invoking attorney work product, attorney-client privilege, or both. Over 100 entries do not include a date, most do not indicate the position or capacity of author and recipient, and many descriptions do not indicate whether legal advice was provided, the documents relate to ordinary business, or which litigation is at issue for the work product doctrine (the state ligation or this case). Accordingly, the log is facially inadequate. *See Muro*, 2006 WL 3422181, at *2 (explaining "a privilege log must identify" the date, capacity of authors and recipients, and "a specific explanation of why it is privileged"); *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *3 (N.D. Ill. July 14, 2020) (noting "[m]uch has been written about how inadequate descriptions put the privilege claim in peril" and that "Courts have rejected privilege log descriptions that are too 'vague' and 'generic'") (internal citations omitted).

      Furthermore, West Bend's briefing fails to add context or otherwise establish privilege. Instead, West Bend states briefly, without legal authority, and not on a document-by-document basis, that "[m]any of the withheld documents" are "classic opinion work product … prepared in anticipation of litigation" or they are

7

"communications with counsel or internal legal assessments." Dkt. 58 at 5-6. West Bend fails to provide the required information for the Court to assess whether the documents are privileged attorney-client communications or work product where it ignores its obligation to establish the elements of privilege as to each withheld document, and fails to provide sufficient information about which named individuals are counsel or when the disputed documents were created. Accordingly, the relevant documents must be produced. *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385 (N.D. Ill. Oct. 12, 2021), objections overruled, No. 1:15-CV-10324, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022) (compelling documents where privilege log and briefing did not provide enough information to assess privilege); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 633-34 (N.D. Ill. 2016) (same).

Moreover, West Bend had three opportunities to provide the Estate with an adequate privilege log, and then, the opportunity to "flesh[ ] out its [privilege] claims" in response to the motion to compel. *Surgery Ctr. at 900 N. Michigan Ave., LLC,* 317 F.R.D. at 633. West Bend failed to do so. For all these reasons, the Court finds West Bend has waived any privilege that may have applied to the relevant, withheld documents. *See id.* (compelling production because "[u]nsupported and undeveloped arguments are deemed waived") (quoting *Price v. Board of Educ. of Chicago*, 755 F.3d 605, 608 (7th Cir. 2014)); *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2015 WL 13735745, at *2 (N.D. Ill. Aug. 17, 2015) (observing "manifestly inadequate privilege logs continue to be submitted even though a court

8

can declare a waiver and is not obligated to allow a party a series of do overs"). To the extent West Bend's privilege log contains documents that are not responsive to plaintiff's RFP Nos. 4, 11-16, 21-22, 30-32, the Court will not compel their disclosure at this time because the Estate has not established their relevance. *See Mendez v. City of Chicago*, No. 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020) (explaining the party moving to compel discovery bears the initial burden to establish relevance).

### C. The common interest doctrine compels production of the requested documents.

Even if West Bend had not waived privilege, the Court finds that West Bend's asserted privilege is abrogated by the common interest doctrine. Under the common interest doctrine, the communications between an insured, his insurer, and their shared attorney are not privileged in subsequent litigation between the insured and the insurer. *Hobbs*, 2022 WL 2528239, at *4 (citing *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178 (1991)). Similarly, documents "prepared solely for the underlying litigation," when the insurer and insured had a common interest in a defense, are not protected by work product when the insurer and insured become adverse. *Abbott Lab'ys v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 410 (N.D. Ill. 2001).

As the assignee of the insured's claims, the Estate stands in the shoes of the insured. *Hobbs*, 2022 WL 2528239, at *4. Therefore, in this litigation where the insured and the insurer are adverse, the attorney-client and work-product privileges do not apply to the underlying-litigation documents and claim file. *See*

9

*Woodruff*, 291 F.R.D. at 244 (noting "a plethora of cases have held that no attorney-client privilege can be asserted against an insured or an assignee of an insured in its action against an insurance company with respect to materials prepared as part of the insured's defense in the underlying action"); *Hobbs*, 2022 WL 2528239, at *7 (finding no protection for insurer's documents unless they are "work product of the *current* litigation") (emphasis in original).

West Bend argues the common interest doctrine does not negate privilege here because the underlying lawsuit remains active on appeal. Dkt. 58 at 4-5. In West Bend's view, producing the claim file and related communications is "fundamentally unfair and prejudices" West Bend in the ongoing state litigation. Dkt. 58 at 4-5. The Court is not persuaded by these arguments. West Bend cites no authority for its argument that the posture of the underlying litigation nullifies the common interest doctrine. The cases the Estate cites in support of applying the common interest doctrine are silent on the issue, and the Court's own research revealed no support for West Bend's position. Second, West Bend has not requested a stay of discovery in this case while the state appeal is litigated. As a result, and given the body of case law discussing how privileges apply in these cases, the Court does not credit West Bend's assertion of prejudice or fundamental unfairness.

West Bend also argues that the insured cannot unilaterally destroy privilege that both parties held. Dkt. 58 at 2. To the contrary, when "privilege attached to documents at the time the common interest arose," the privilege remains "unless one of the parties sharing the interest becomes an adversary." *Dexia Credit Loc. v.*

10

*Rogan*, 231 F.R.D. 268, 274 (N.D. Ill. 2004). As previously stated, the parties are now adverse, so the privilege no longer stands.

Finally, West Bend asserts—in two brief sentences—that disclosure of the disputed documents would violate the cooperation clause in the insurance agreement with the insured. Dkt. 58 at 6. West Bend, however, does not even quote or attach the cooperation clause, and again, West Bend fails to include legal authority to support its argument. West Bend's undeveloped and unsupported arguments are waived. *Surgery Ctr. at 900 N. Michigan Ave., LLC*, 317 F.R.D at 633. Accordingly, the Court will not consider this argument further.

## CONCLUSION

For the foregoing reasons, the Estate's motion to compel, Dkt. 57, is granted. By November 17, 2025, consistent with this order, West Bend shall produce the withheld documents relating to the claim file and underlying litigation. Given the forthcoming production, the Court strikes the November 19, 2025 fact discovery deadline and the expert discovery schedule. In the parties' November 5, 2025 joint status report, the parties shall include a new proposed fact discovery deadline and proposed expert discovery schedule.

**So Ordered.**

　　　　　　　　　　　　　　　　　　　　*/s/ Jeannice W. Appenteng*
　　　　　　　　　　　　　　　　　　　　**Jeannice W. Appenteng**
　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**

Date: 11/3/2025

11